UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANOTHER PLANET ENTERTAINMENT, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>VIGILANT INSURANCE COMPANY,<br><br>        Defendant. | Case No. 20-cv-07476-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

    Vigilant's motion to dismiss is granted. Another Planet alleges that its auditoriums shut down because the coronavirus was physically present on surfaces in those facilities, and that the shutdowns were therefore the result of "direct physical loss or damage" at the facilities within the meaning of its insurance policy. It is difficult to understand how Another Planet can allege with a straight face that the virus was actually present on its facilities' surfaces at the time of the shutdowns. That seems unknowable. But in any event, the complaint must be dismissed for a more basic reason: Another Planet's facilities did not shut down because of the virus's presence on facility surfaces. Rather, those facilities shut in response to the closure orders, which would have required them to remain closed even if Another Planet could have proven to a certainty that the virus was *not* present at its facilities. This is obvious both from the allegations in the complaint and the closure orders that the complaint incorporates (and that are subject to judicial notice). Therefore, the company's losses were not caused by "direct physical loss or damage" to its facilities. *See Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 2020 WL 5847570, at *1

(S.D. Cal. Oct. 1, 2020).

The *Hughes* case, which stands for the proposition that physical conditions rendering a property unsafe can constitute property damage, does not save Another Planet's case. *See Hughes v. Potomac Insurance Co.*, 199 Cal. App. 2d 239 (1962). The plaintiff in *Hughes* could not use his home because it was partially overhanging a cliff after a landslide. The house suffered no tangible physical injury to the structure, but the court determined that there was, in fact, property damage because the building was unsafe. *Id.* In this case, however, there was nothing specific about Another Planet's properties that caused them to shut down. Another Planet could not use its facilities because there was a generalized danger of people spreading the virus to one another, and the generally applicable closures orders prevented nearly all businesses from operating.

Another Planet also alleges it is entitled to coverage under the policy's civil authority provision. That provision includes coverage for the impairment of operations caused directly by a civil authority's prohibition of access to the insured's premises—but only if the prohibition of access is the direct result of direct physical loss or damage to a different property within a one-mile radius. Another Planet's theory goes like this: it is safe to assume that the virus must be on the surface of some property within one mile of Another Planet's facilities, and for that reason, the city instituted closure orders that prevented Another Planet from operating its facilities. But again, the allegations in the complaint and the closure orders show that this theory is simply made up. The closure orders were clearly passed in response to the virus in the community at large, not in specific response to the presence of the virus at properties within a mile of Another Planet's facilities.

It could be a different story if a business—which could have otherwise been operating—

had to shut down because of the presence of the virus within the facility. For example, a restaurant might need to close for a week if someone in its kitchen tested positive for COVID-19, requiring the entire facility to be thoroughly sanitized and remain empty for a period. Perhaps the restaurant could successfully allege that the virus created physical loss or damage in the same way some chemical contaminant might have.[1] But as the complaint and the closure orders demonstrate (and as Another Planet's counsel conceded at the hearing), its facilities would have had remained shut regardless of whether the virus was present in its facilities.

It is exceedingly difficult to imagine that Another Planet will be able to state a claim for coverage under this policy. But in an abundance of caution, dismissal is with leave to amend. Any amended complaint must be filed within 14 days of this ruling; if none is filed by that time, dismissal will automatically be with prejudice. A response is due 14 days after the amended complaint is filed.

**IT IS SO ORDERED.**

Dated: February 25, 2021

VINCE CHHABRIA
United States District Judge

---

[1] On this point, the court in *Pappy's Barber Shops* may have been too quick to assume that the presence of the virus at a facility can never amount to "direct physical loss or damage." But the court's more specific conclusion that the losses of a business subject to a generally applicable closure order are by definition not caused by the presence of the virus at the facility is unassailable.