FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANOTHER PLANET ENTERTAINMENT, LLC, *Plaintiff-Appellant*, v. VIGILANT INSURANCE COMPANY, *Defendant-Appellee.* | No. 21-16093 D.C. No. 3:20-cv-07476-VC ORDER CERTIFYING QUESTION TO THE CALIFORNIA SUPREME COURT |

Filed December 28, 2022

Before: Carlos T. Bea, Sandra S. Ikuta, and Morgan Christen, Circuit Judges.

# SUMMARY[*]

### California Law

The panel certified the following question to the California Supreme Court:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

## COUNSEL

Kirk Pasich (argued), Nathan M. Davis, and Arianna M. Young, Pasich LLP, Los Angeles, California, for Plaintiff-Appellant.

Jonathan D. Hacker (argued), Jenya Godina, and Jeremy R. Girton, O'Melveny & Myers LLP, Washington, D.C.; Susan Koehler Sullivan, Douglas J. Collodel, Gretchen S. Carner, and Brett C. Safford, Clyde & Co US LLP, Los Angeles, California; for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

We respectfully ask the California Supreme Court to answer the certified question presented below, pursuant to California Rule of Court 8.548, because we have concluded that resolution of this question of California law "could determine the outcome of a matter pending in [this] court," and "[t]here is no controlling precedent" in the decisions of the California Supreme Court. Cal. R. Ct. 8.548(a).

This case involves an insured who sued for breach of contract, bad faith, and fraud when its insurer denied coverage for business income losses that the insured incurred following government closure orders issued during the COVID-19 pandemic. The insured alleged that the COVID-19 virus was present on its premises before the orders were issued, or would have been present had the insured not closed its venues in compliance with the orders, and it sought coverage under several provisions of its commercial property insurance policy that require "direct physical loss or damage to property" to trigger coverage. The district court dismissed the insured's suit for failure to state a claim.

The issue here is whether the insured's allegations, if taken as true, were sufficient to show "direct physical loss or damage to property" as defined by California law.

## I

We summarize the material facts. *See* Cal. R. Ct. 8.548(b)(3). Another Planet is an event promoter and venue operator that owns event venues in California and Nevada. In 2019, Vigilant Insurance Company issued a commercial

Case: 21-16093, 12/28/22, ID: 12618945, DktEntry: 58, Page 4 of 10
Case 3:20-cv-07476-VC Document 126 Filed 12/28/22 Page 4 of 10

4   ANOTHER PLANET ENTERTAINMENT, LLC v. VIGILANT INS. CO.

property insurance policy to Another Planet for the period from May 1, 2019 to May 1, 2020. After the COVID-19 pandemic began in early 2020, government closure orders forced Another Planet to suspend its operations, close its venues, and cancel events, resulting in "substantial financial losses." Another Planet sought and was denied coverage from Vigilant. In response, Another Planet filed an action in the Northern District of California, alleging breach of contract, bad faith, and fraud.

Another Planet seeks coverage under several provisions of its policy that require actual or imminent "direct physical loss or damage to property": (1) a set of four "Business Income" provisions stating that Vigilant will cover certain business income losses if they are caused by "direct physical loss or damage" to property; (2) a "Civil Authority" provision stating that Vigilant will cover losses caused by a civil authority's prohibition of access to covered or dependent business premises as "the direct result of direct physical loss or damage to property" within one mile of the premises; and (3) a "Loss Prevention Expenses" provision stating that Vigilant will cover costs incurred to protect a building or personal property from "imminent direct physical loss or damage" caused by a covered peril if the insured provides notice of "any loss prevention action" within 48 hours.

In its First Amended Complaint, Another Planet alleged that the COVID-19 virus "was present at various times on and in its insured properties, or would have been present had it not been for the closures of its properties directed to curb the spread of SARS-CoV-2." It further alleged that aerosolized droplets of the COVID-19 virus can "stay suspended in air and infective for at least 16 hours" and can remain active on

inert surfaces for at least 28 days, meaning the droplets "physically alter the air and airspace in which they are present and the surfaces of both the real and personal property to which they attach, constituting physical loss or damage." Another Planet claimed that the presence of COVID-19 droplets "can render both real and personal property unusable for its intended purpose and function, constituting physical loss or damage." The complaint also noted that minimizing the spread of COVID-19 "requires steps to be taken," including "physical distancing, regular disinfection, air filtration, and further physical alterations, such as installation of physical barriers restricting the movement of the aerosolized droplets."

Vigilant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Another Planet had not sufficiently alleged direct physical loss or damage to property. The district court agreed and dismissed the case with prejudice after giving Another Planet one opportunity to amend its complaint. As relevant to this request for certification, the district court concluded that it "seem[ed] unknowable" whether the COVID-19 virus was actually present on Another Planet's premises.

## II

Because California law governs interpretation of the policy and the California Supreme Court has not yet considered the issue, we "must determine what result [that] court would reach based on state appellate court opinions, statutes and treatises." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (quoting *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015)). "We

will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law." *Id.* (quoting *Tomlin v. Boeing Co.*, 650 F.2d 1065, 1069 n.7 (9th Cir. 1981)). Here, however, two different divisions of the Second District of the California Courts of Appeal have issued conflicting decisions regarding whether allegations like Another Planet's suffice to state a viable claim for "direct physical loss or damage to property."

Two months after the district court dismissed Another Planet's suit, Division 4 of the Second District of the California Courts of Appeal decided *United Talent Agency v. Vigilant Insurance Co.*, which involved claims for coverage under insurance provisions identical to those in Another Planet's policy. 293 Cal. Rptr. 3d 65, 68 (Ct. App. 2022). In *United Talent Agency*, the insured alleged that the COVID-19 virus had been present on its insured premises or would have been present but for the government closure orders and the insured's efforts to reduce and prevent the virus's presence; that several of the insured's employees, their spouses, and their dependents had tested positive for COVID-19; and that COVID-19 droplets "land on and adhere to surfaces and objects" and thus "physically change the property by becoming part of its surface." *Id.* at 69. The insured in *United Talent Agency* compared COVID-19 to "mold, asbestos, mudslides, smoke, oil spills, and other similar elements that cause property damage, although they later might be removed, cleaned, or remediated." *Id.*

The Court of Appeal in *United Talent Agency* held that the superior court properly sustained the insurer's demurrer, concluding that the insured did "not establish[] that the presence of the virus constitutes physical damage to insured

property." *Id.* at 76–80.  The court acknowledged the existence of cases concluding that the presence of a "physical force" like "smoke, ammonia, odor, or asbestos" can constitute direct physical damage by "render[ing] real property uninhabitable or unsuitable for its intended use." *Id.* at 77 (quoting *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 286 Cal. Rptr. 3d 576, 589 (Ct. App. 2021)).  But the court reasoned that the presence of COVID-19 is only "'short lived' contamination that can be addressed by simple cleaning" and thus does not constitute direct physical loss or damage. *Id.* at 76–77 (quoting *Inns-by-the-Sea*, 286 Cal. Rptr. 3d at 588 n.17).

Three months after *United Talent Agency*, Division 7 of the Second District of the California Courts of Appeal came to a different conclusion in *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Co.*, a case involving the denial of coverage under a policy that also contained the same "direct physical loss or damage" language at issue here. 296 Cal. Rptr. 3d 777, 780 (Ct. App. 2022). In *Marina Pacific*, the insureds alleged that the COVID-19 virus causes a "distinct, demonstrable or physical alteration to property" because it "actually bonds and/or adheres to . . . objects through physico-chemical reactions involving, *inter alia*, cells and surface proteins." *Id.* at 781. The insureds claimed that the COVID-19 virus had been present "on a variety of physical objects in [their] insured properties, including furniture, countertops, walls, bedding, appliances and food and other packaged items, as well as in the air," and that they had disposed of property damaged by the virus. *Id.* at 781–82. Further, they alleged that "public health authorities ha[d] ordered that Hotel Erwin be evacuated, decontaminated,

or disinfected" after several employees of the hotel tested positive for COVID-19. *Id.* at 782.

The Court of Appeal held in *Marina Pacific* that "[a]ssuming . . . the truth of those allegations, even if improbable, absent judicially noticed facts irrefutably contradicting them, the insureds ha[d] unquestionably pleaded direct physical loss or damage to covered property within the definition articulated in *MRI Healthcare*—a distinct, demonstrable, physical alteration of the property." *Id.* at 787–90 (citing *MRI Healthcare Ctr. of Glendale v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 27, 37–38 (Ct. App. 2010)). The court acknowledged that *United Talent Agency* was "[n]ot distinguishable" but maintained that the court there improperly disregarded the insured's factual allegations as improbable when evaluating the insurer's demurrer. *Id.* at 790.

On appeal, Another Planet highlights this split in authority and urges us to adopt *Marina Pacific*'s holding because *United Talent Agency* "misapplied California law by making factual conclusions contrary to those alleged in the operative complaint." Vigilant disagrees, arguing that we should follow *United Talent Agency* because *Marina Pacific* "is an outlier decision at odds with an overwhelming body of precedent." Vigilant contends that *Marina Pacific* "gave short shrift" to the court's ability to "consider common-sense realities at the demurrer stage."

The answer to this question "could determine the outcome of [this] matter," Cal. R. Ct. 8.548(b)(4), because if the allegation of the presence or potential presence of the COVID-19 virus is sufficient to show "direct physical loss or

damage to property," the district court erred in dismissing Another Planet's complaint for failure to state a claim, and we would remand to the district court for further proceedings. Alternatively, if the allegation is not sufficient, we would affirm the district court.

### III

In light of the foregoing discussion, and because the answer to this question "could determine the outcome of a matter pending in [this] court," Cal. R. Ct. 8.548(a), we respectfully certify to the California Supreme Court the following question:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

We do not intend our framing of this question to restrict the California Supreme Court's consideration of any issues that it determines are relevant. If the California Supreme Court decides to consider the certified question, it may in its discretion reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999). We will accept the California Supreme Court's decision on this question. *See* Cal. R. Ct. 8.548(b)(2).

If the California Supreme Court accepts review of the certified question, we designate Appellant Another Planet Entertainment, LLC as the petitioner pursuant to California Rule of Court 8.548(b)(1).

10  ANOTHER PLANET ENTERTAINMENT, LLC V. VIGILANT INS. CO.

The clerk of our court is hereby ordered to transmit forthwith to the California Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record, along with a certificate of service on the parties. Cal. R. Ct. 8.548(c), (d).

Further proceedings in our court are stayed pending the California Supreme Court's decision on whether it will accept review, and if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order from this court. The Clerk is directed to administratively close this docket, pending further order.

The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the California Supreme Court's decision to decline to answer the certified question. Within 10 days after the California Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing this court of the decision. If the California Supreme Court accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

It is so **ORDERED**.